In the Matter of the Arbitration between KNICKERBOCKER INSURANCE COMPANY, Appellant, and THELMA GILBERT, Respondent.

First Department, July 7, 1970.

*Arnold Davis* of counsel (*Guminick & Lieber,* attorneys), for appellant.

*Philip Myer* for respondent.

NUNEZ, J. This appeal raises the question of the timely service of appellant's application for a stay of arbitration.

It is undisputed that a notice of intention to arbitrate, conforming to the provisions of CPLR 7503 (subd. [c]), was served on petitioner on December 1, 1969. The petition to stay arbitration was sent by certified mail on December 11, 1969 and was received by respondent's attorney on December 12, 1969.

We do not reach the question as to whether service upon claimant's attorney, if timely made, is effective to commence a proceeding to stay arbitration, since we conclude that such service was not timely made in the instant case. It should be

noted that there is a divergence of opinion as to the effectiveness of service on an attorney, the Fourth Department holding in *Matter of Bauer (MVAIC)* (31 A D 2d 239) that such service is proper, and the Second Department reaching a contrary conclusion in *Matter of State-Wide Ins. Co. (Lopez)* (30 A D 2d 694).

CPLR 7503 (subd. [c]) provides, in part: " An application to stay arbitration must be made by the party served within ten days after service upon him of the notice or he shall be so precluded. Notice of such application shall be served in the same manner as a summons or by registered or certified mail, return receipt requested."

It should be noted that the provision for the manner of service of notice of application to stay arbitration repeats the exact language in the sentence of CPLR 7503 (subd. [c]) just preceding the one above quoted, with regard to service of the notice of intention to arbitrate.

The legislative history as to the provisions for service of notice of intention to arbitrate and petition to stay arbitration is significant in construing those provisions. The original tentative draft provision provided for service in the same manner as a summons (Fourth Preliminary Report of Advisory Committee on Practice and Procedure, pp. 80–81). Service by registered or certified mail, return receipt requested, was added at the suggestion of a number of Bar Associations to conform with actual practice (Fifth Preliminary Report of Advisory Committee on Practice and Procedure, pp. 182–183). In *Monarch Ins. Co.* v. *Pollack* (32 A D 2d 819, 820) the court stated, with regard to this change: " The implication is that practitioners in the arbitration field had satisfied themselves of the efficacy of service by registered or certified mail and of the conclusory nature of the signed and dated receipt which fixes the time of actual delivery of the notice of intention to arbitrate."

Thus it was held in *Monarch Ins. Co.* (*supra*) and by this court in *Cosmopolitan Mut. Ins. Co.* v. *Moliere* (31 A D 2d 924) that the 10-day period to make an application for a stay of arbitration commences to run from the date of *actual service* of the notice of intention and not from the time of mailing. Apart from other reasons, discussed hereinafter, it must be presumed that where the Legislature used the same language as to service of a petition to stay arbitration and as to service of a notice of intention to arbitrate, the same construction must be given to that language. Thus it is not the mailing but the receipt of the papers which constitutes service.

Several cases construing the language of section 330 of the Election Law which provides that proceedings under that section be instituted within a certain number of days, are strikingly analogous to the case at bar. In *Matter of King* v. *Cohen* (293 N. Y. 435, 439) it was held that the statute "calls for delivery of the instrument of notice not later than on the last day on which the proceeding may be commenced". It was held that the notice, although timely mailed, was insufficient since it was not received until after the last day. The court said (p. 439): "In this connection, we are moved to remark that the use of registered mail is likely to result in a failure of timely delivery of the notice of the proceeding." See also to the same effect this court's decision in *Matter of Weiser* v. *Power* (29 A D 2d 640).

The petition to stay arbitration instituted the "special proceeding" authorized by CPLR 7502 (subd. [a]) since it was the first application arising out of the controversy brought before the court (*Matter of Jonathan Logan, Inc.* [*Stillwater Worsted Mills*], 31 A D 2d 208, 209, affd. 24 N Y 2d 898). The method for commencing a special proceeding is provided for in CPLR 304: "A special proceeding is commenced and jurisdiction acquired by service of a notice of petition or order to show cause."

Service to commence a proceeding is different from service by mailing after a proceeding is commenced (see *Monarch Ins. Co.* v. *Pollack,* 32 A D 2d 819, *supra*). CPLR 7503 (subd. [c]) does not provide simply for mailing but for service "by registered or certified mail, return receipt requested." This court in *14 Second Ave. Realty Corp.* v. *Szalay* (16 A D 2d 919) held that "Service by mail is complete regardless of delivery where the mailing itself complies with all requisites." The statute under consideration here does not make the mailing itself compliance.

The decision in *Matter of Glens Falls Ins. Co.* v. *Anness* (62 Misc 2d 592) holding that service under CPLR 7503 (subd. [c]) is accomplished when the petition is mailed is, of course, no holding binding on this court. Nor has it any weighty persuasive effect since its rationale is predicated upon an irrelevant and impermissible assumption of impracticality and inconvenience in adopting the rule mandated by the language of CPLR 7503 (subd. [c]). Expediency and convenience have no place in determining questions of jurisdiction. Jurisdiction is a matter of power not propriety. Moreover, the misplaced solicitude for the practitioner, which is invoked in the *Glens Falls Ins. Co.* case is negated by the facts. Thus, in *Matter of Bauer*

*(MVAIC)* (31 A D 2d 239, *supra*) the notice of intention to arbitrate was served on December 8, 1967 and evidently, without difficulty, a notice of petition to stay arbitration was received by certified mail, return receipt requested, on December 15, 1967.

In *Matter of Jonathan Logan, Inc. (Stillwater Worsted Mills)* Justice EAGER, speaking for the court said (31 A D 2d 208, 211, *supra*): "It is well known that article 75 of the CPLR was enacted for the purpose of promotion of arbitration as a means for the expeditious settlement of disputes.   *   *   *   Such purpose would be thwarted by a construction which would permit the extension, by order to show cause *or otherwise*, of the time for the making of an application to the court for a stay of arbitration as to which notice is duly given." (Italics mine.)  In *Matter of General Acc. Fire & Life Assur. Corp. (Cerretto)* (60 Misc 2d 216) the court held that parties could not stipulate to extend the time fixed by CPLR 7503 (subd. [c]) for making an application to stay an arbitration duly demanded under that section.  That decision was predicated upon CPLR 201 which provides in part: "No court shall extend the time limited by law for the commencement of an action."

To hold here that the proceeding was commenced by mailing the papers upon the application to stay arbitration would by indirection extend the time to commence the proceeding, when in view of CPLR 201, the court could not do so directly.

The order entered February 13, 1970 should be affirmed with costs.

EAGER, J. (dissenting).  In providing that notice of application for a stay of arbitration may be served "by registered or certified mail, return receipt requested" (CPLR 7503, subd. [c]), the Legislature clearly intended that the service was effective when the notice was properly mailed.  This is in accordance with the long-standing general rule.  For instance, in *Hurley* v. *Olcott* (198 N. Y. 132, 134–135), the Court of Appeals in its discussion of when notice was deemed served, in connection with an action brought under the Employers' Liability Act, said: "In many cases the statute provides that notice may be served by mail.  Such is the provision as to service of papers on the attorneys in an action, and it has been uniformly held that the service was effective when the papers were properly mailed, regardless of their receipt by the adverse party.  The risk of miscarriage is with the party to whom they are directed. (*Jacobs* v. *Hooker*, 1 Barb. 71; *Brown* v. *Briggs*, 1 How. Pr. 152; *Radcliff* v. *Van Benthuysen*, 3 How. Pr. 67.)  The law may prescribe other than personal service even of original process by which it is sought to bring a party into court and bind him by its

judgment. * * * The only question is the construction of the statute, and in accordance with the uniform current of authority in analogous cases it is clear that the proper deposit in the post is a complete compliance with the statutory requirement.'' (See, also, *Commercial Credit Corp.* v. *Ornstein,* 245 App. Div. 815; *Desroches* v. *Caron,* 11 Misc 2d 838; 1941 Opns. Atty. Gen., p. 295.)

In view of the 10-day limitation period for the making of the application for a stay of arbitration, the provision for service by mail would be of little practical benefit if it be held that the application is not considered made until delivery of the notice mailed. Such holding would clearly frustrate the legislative intention. As Mr. Justice KORN stated in a recent case:

'' While the party demanding arbitration may have many months within which to prepare his papers and obtain service upon the party against whom arbitration is sought, the party served and his attorney must determine if a triable issue exists, prepare his papers and have process served personally all within 10 days. Since he must allow at least two or three days for his process server to make service, the attorney may in fact have substantially less than 10 actual working days within which to obtain affidavits, prepare papers, etc. And of course there is always the possibility that the process server will be unable to make personal service within this short period.

'' It is apparently for this reason that the Legislature provided for the alternate method of service by certified or registered mail.

'' However, to hold that mail service does not take place until the post office actually makes delivery, would certainly discourage a prudent practitioner from employing this method of service. It is not unusual that papers mailed may not be actually delivered for several days. To obtain delivery within 10 days, therefore, the moving party would have to post his papers well before the 10th day. He would, therefore, in effect, have less than the 10 full days to prepare and serve his motion within the period mandated by the statute.

'' * * * Of course, even if the attorney in posting his papers had allowed what might be considered sufficient time for the mail to be delivered within 10 days, there was no guarantee that the post office would have made delivery within that time, or that delivery would have been made at all. He would therefore be using the mails at his peril.

'' To add to his burden, the attorney, after mailing, would not for several additional days receive notification by return receipt that such delivery was made in time or was unable to be com-

pleted. Thus, as a practical matter, by the time the mailing attorney may learn that the post office cannot make timely delivery it would no doubt be too late for him to do anything about it.

"It would thus appear that if actual delivery determines effectiveness of mail service, an attorney would be best advised to avoid this method of service. It is for this reason that the court is not disposed to place a construction on 7503 (subd. [c]) which while permitting mail service, would make its use legally impractical if not most hazardous, particularly where the statute itself is unclear as to when service by mail is deemed completed." (*Matter of Glens Falls Ins. Co.* v. *Anness*, 62 Misc 2d 592, 593–594.)

In addition to the aforesaid case in point in this Department, a decision of Special Term in the Second Department holds that mailing within the 10-day period is all that is required (*Matter of Liberty Mut. Ins. Co.* [*Keane*], N. Y. L. J. March 6, 1967, p. 21, col. 4 [FANELLI, J.]). There, notice of application for the stay was mailed on January 5, 1967 which was nine days after receipt of the notice of intention to arbitrate. Although it was sent by ordinary mail and not received until four days later, Mr. Justice FANELLI held that: "The fact that respondent did not receive such application papers until January 9, 1967, is beside the point. * * * In the absence of any claim or proof of prejudice on the part of respondent, this court is of the opinion that the purpose of the statute has been fulfilled in the case at bar even though such motion papers were served by petitioner by ordinary mail rather than by registered or certified mail."

Here, "the purpose of the statute" as well as the literal terms thereof, in requiring that the application "must be made" (CPLR 7503, subd. [c]) within the 10-day period has been fulfilled by the petitioner's mailing of the application papers by certified mail on the 10th day after service of the notice of intention to arbitrate.

Furthermore, the arbitration is to be had under and pursuant to the agreement of the parties as stated in the uninsured motorist indemnification endorsement and, thereby, the parties have agreed that the arbitration shall be in accordance with the rules of the American Arbitration Association. Such rules provide that the parties "shall be deemed to have consented and shall consent that any papers, notices or process necessary or proper for the initiation or continuation of an arbitration under these Rules and for any court action in connection therewith or for the entry of judgment on any Award made there-

under may be served upon such party (a) by mail addressed to such party or his attorney at his last known address '' (Accident Claims Tribunal Rules, § 30). Thus, the notice of application for the stay was properly mailed to the attorney for the respondent designated as such on the notice of intention to arbitrate and to his address as thereon stated. (*Matter of Bauer* [*MVAIC*], 31 A D 2d 239.) And, with the application to become a pending action, it may be assumed that the parties contemplated that applicable would be the general rule expressed in CPLR 2103 (subd. [b], par. 2) that service on an attorney '' by mail shall be complete upon deposit of the paper enclosed in a postpaid properly addressed wrapper, in a post office or official depository ''.

The cases of *Monarch Ins. Co.* v. *Pollack* (32 A D 2d 819) and *Cosmopolitan Mut. Ins. Co.* v. *Moliere* (31 A D 2d 924), cited by the majority are not in point as each dealt with the situation wherein the respective mailings of the applications for a stay of arbitration were clearly disclosed to have taken place more than 10 days after receipt of the notice of intention to arbitrate, the respective courts correctly holding that CPLR 2103 (subd. [b], par. 2) does not work an extension of three days in such a situation. Actually, in the memorandum in each of these cases, the court, without deciding the question here, seems to concede that the application for a stay was made when the motion papers were mailed.

In light of the foregoing, the petitioner's application for a stay was timely and properly made. On the merits, however, the petitioner insurance company cannot have it both ways. This was a single-car accident and the petitioner is responsible to the respondent passenger, in accordance with its policy provisions, either as the liability carrier or, if the liability coverage is not applicable, under the uninsured indemnification endorsement. Perhaps, in view of the proceedings in the tort action, the petitioner should be estopped from seeking to avoid liability under the endorsement. Or perhaps, as suggested by claimant-respondent, there should be a joint trial of the plenary action and the issues raised herein. I would reverse and remand for such proceedings at Special Term as may be proper to determine the issues on the merits.

STEVENS, P. J., and CAPOZZOLI J., concur with NUNEZ, J.; EAGER, J., dissents in opinion in which BASTOW, J., concurs.

Order entered on February 13, 1970, affirmed, with $30 costs and disbursements to the respondent.